Aksana M. Coone, Esq. (SBN 190125)
LAW OFFICES OF AKSANA M. COONE
1801 Century Park East, Suite 2400
Los Angeles, CA 90067
Tel: (310) 556-9650
Fax: (310) 954-9008
Email: aksana@coonelaw.com

Attorneys for Plaintiff,
MARJORIE CASHION

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| MARJORIE CASHION,<br><br>    Plaintiff,<br><br>    vs.<br><br>VIKING RIVER CRUISES, INC. d/b/a VIKING CRUISES; VIKING OCEAN CRUISES LTD.<br><br>    Defendants. | Case No.: 2:21-cv-00767<br><br>**COMPLAINT FOR DAMAGES; DEMAND FOR A JURY TRIAL**<br><br>Complaint filed: January 27, 2021<br>District Judge:<br>Magistrate Judge: |
|---|---|

COMES NOW the plaintiff, MARJORIE CASHION (hereinafter "Plaintiff") and for a cause of action against defendants, VIKING RIVER CRUISES, INC. d/b/a VIKING CRUISES and VIKING OCEAN CRUISES LTD., complains and alleges as follows:

**JURISDICTION AND VENUE**

1.  This is an action seeking damages in excess of $75,000, exclusive of interest, costs, and attorney's fees between citizens of different States. Federal subject matter jurisdiction arises under and is by virtue of diversity citizenship pursuant to 28 U.S.C. § 1332. In the alternative, if diversity jurisdiction does not

1  apply, then this matter arises under maritime law such that the Court has admiralty
2  jurisdiction under 28 U.S.C. § 1333 and the general maritime law of the United
3  States.
4      2.   Venue is proper in this District pursuant to 28 U.S.C § 1391(b) because
5  Defendant VIKING RIVER CRUISES, INC. d/b/a VIKING CRUISES is a
6  California corporation with its principal place of business located at 5700 Canoga
7  Avenue, Suite 200, Woodlands Hills, California 91367 from which it and Defendant
8  VIKING OCEAN CRUISES LTD. conduct their worldwide cruise operations and
9  based on the forum selection clause included in the terms of Defendants' Passenger
10 Ticket Contract requiring that all disputes involving cruises touching U.S. ports
11 "SHALL BE LITIGATED, IF AT ALL, IN AND BEFORE THE UNITED
12 STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA
13 IN LOS ANGELES, CALIFORNIA, U.S.A."

## THE PARTIES

15      3.   Plaintiff is a resident of the State of Alabama.
16      4.   Defendant VIKING RIVER CRUISES, INC d/b/a VIKING CRUISES
17 was and is a for profit California corporation (entity number: C2221662) with its
18 principal place of business and worldwide headquarters in Los Angeles County,
19 California.
20      5.   Defendant VIKING OCEAN CRUISES LTD. is a foreign company
21 with its principal place of business and worldwide headquarters in Los Angeles
22 County, California.  VIKING OCEAN CRUISES LTD. is identified in Defendants'
23 Passenger Ticket Contract as the "carrier" operating the vessel *Viking Sky*.
24      6.   At all times herein material, Defendants are common carriers engaged
25 in the business of marketing, selling and operating a cruise line and providing cruise
26 vacations to passengers for compensation on ships that sail out of various foreign
27 and U.S. ports, including Miami, Florida.
28 ///

**FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**

**(Negligence-General Maritime Law)**

7.  On or about January 29, 2020, and at all times herein material, Defendants owned, managed, operated, maintained, supervised, inspected and/or controlled the ocean-going passenger vessel known as *Viking Sky* (hereinafter "Vessel"), which was operating on navigable waters and the high seas.

8.  On or about January 29, 2020, Plaintiff was a fare paying passenger on the Vessel.

9.  Prior to the departure date, Plaintiff purchased a ticket for a 14 night "Panamanian Canal & Central America" cruise aboard the Vessel with a scheduled departure from Miami, Florida on January 24, 2020, and disembarkation at the same port on February 7, 2020 (hereinafter "Subject Cruise"). The Subject Cruise sailed to various other exotic ports including Panama, Belize, Honduras, and Costa Rica.

10. At all material times, Defendants were engaged in the business of providing cruise vacation experiences to the public. The experience of visiting various ports of call is the *sine qua non* of the cruises sold and advertised by Defendants. Defendants advertised, marketed and promoted its cruises, including the Subject Cruise, to prospective passengers and Plaintiff, to entice the public and Plaintiff to purchase its cruise packages.

11. At all material times, the ports-of-call Defendants' Vessel visited were an integral part of Defendants' cruise package for the Subject Cruise.

12. On or about, January 29, 2020, and as an integral component of the Subject Cruise sold to Plaintiff, Defendants arranged for its passengers, including Plaintiff, to be transported to shore in Roatan, Honduras and back to the Vessel via its lifeboat/tender boat. Upon returning to the Vessel, while on the tender, Plaintiff was instructed by Defendants' crew to disembark the tender and board the Vessel. At the time of the tender operation, the sea conditions were rough with the tender rising and falling and moving back and forth a few feet at a time. Despite these

1  hazardous conditions, Defendants' crewmembers did not tie the tender to the Vessel,
2  and instead, instructed passengers, including Plaintiff to jump onto the Vessel when
3  the tender moved closer to it. Plaintiff attempted to transfer onto the tender and was
4  assisted by two crewmembers on the Vessel who held her by her shoulders. When
5  the tender and Vessel separated, one of Defendants' crewmembers dropped Plaintiff,
6  causing her right leg to fall between the Vessel and the tender. Due to back-and-
7  forth movement of the tender, Plaintiff's right leg was crushed between the two
8  vessels resulting in serious personal injuries, including lacerations and bruising on
9  the right leg and knee, as well as injuries to her left leg and knee and both shoulders.
10     13.    There was nothing the Plaintiff could have done to have prevented her
11  incident or to have avoided encountering the dangers of the tender operation under
12  the conditions then present.
13     14.    At all material times, Defendants, as the owners and/or operators of the
14  Vessel, owed Plaintiff a nondelegable duty to exercise reasonable care under the
15  circumstances to avoid causing her personal injuries. This nondelegable duty
16  includes a duty to provide safe ingress and egress from the vessel. *McBride v.*
17  *Carnival Corporation*, 2019 WL 3503338 (S.D. Fla. August 1, 2019).
18     15.    Defendant had a further duty to warn Plaintiff of any dangers that were
19  known or could have been known to Defendant.
20     16.    On or about January 29, 2020, Defendants, through the negligent acts
21  and omissions of its agents, employees, and crew, breached their duty of reasonable
22  care to Plaintiff, and as part of a continuous course of conduct, negligently owned,
23  operated, maintained, controlled, supervised and inspected the Vessel, its gear and
24  equipment, and negligently committing the following acts and/or omissions,
25  including, but not limited to:
26     a. Failing to provide passengers, including Plaintiff, reasonably safe means of
27        ingress and egress to and from the Vessel;
28     b. Failing to provide proper assistance to Plaintiff during the tender operation

so that Plaintiff would have a reasonably safe means of ingress and egress to and from the Vessel in violation of industry standards, international safety guidelines, and based on information and belief, Defendant's own safety practices and standards;

c. Failing to provide proper and/or sufficient warnings to passengers so that passengers, including Plaintiff, had a reasonably safe means of ingress and egress to and from the Vessel;

d. Failing to warn Plaintiff of the dangers associated with tendering operations under the conditions then present;

e. Failing to warn Plaintiff that there would not be proper and sufficient assistance for passengers attempting to embark/disembark the Vessel;

f. Failing to warn passengers that its crew members were not properly trained and/or supervised so as to provide proper assistance to allow passengers, including Plaintiff, to embark/disembark the vessel in a reasonably safe manner;

g. Failing to provide proper and/or sufficient instructions to passengers so that passengers, including Plaintiff, had a reasonably safe means of ingress and egress to and from the Vessel;

h. Failing to provide a safe embarkation area aboard the Vessel and adequate and/or sufficient handrails in the Vessel's embarkation area so that passengers, including Plaintiff, had a reasonably safe means of ingress and egress to and from the Vessel;

i. Failing to monitor and/or supervise the tender operation, as it occurred, to ensure that it was being conducted in a safe manner;

j. Allowing the tender operation to proceed at sea when the conditions were too rough and unsafe for tender to vessel transfer;

k. Failing to delay the tendering operation until weather and sea conditions have improved;

l. Failing to take proper safety precautions and use reasonable and additional means, including securing mechanisms, to minimize risks associated with tendering operations under the weather and sea conditions then present and in light of the anticipated roll, sway, yaw and/or winds and waves so as to provide passengers, including the Plaintiff with a safe means of ingress and egress to and from the vessel;

m. Allowing the tendering operation to proceed prior to and/or without first inspecting the manner in which the tender was secured to the Vessel to ensure it was properly and adequately secured;

n. Failing to secure the tender area and the tender adequately and/or safely to the Vessel;

o. Failing to adequately and/or safely inspect and monitor the tender area;

p. Failing to properly communicate with the tender crewmembers to ensure a safe tender operation and that procedures for the safe embarkation and disembarkation to and from each vessel are followed;

q. Failing to inspect, investigate, screen, select, and retain the services of its crew, employees, servants, and agents to ensure the tender operation was being conducted in a safe manner;

r. Failing to adopt, implement and/or enforce proper and adequate policies, protocols, and procedures to ensure tender operations were being conducted in a safe manner;

s. Failing to train, supervise, and/or monitor its crewmembers in following proper and adequate policies, protocols, and procedures to ensure tender operations were being conducted in a safe manner;

t. Failing to adopt, implement and/or enforce proper and adequate policies, protocols, and procedures for the supervision of tender operations as they occur;

///

  u. Failing to adopt, implement and/or enforce proper and adequate policies, protocols, and procedures requiring employees and/or agents to abide by reasonable safety standards;

  v. Failing to adopt, implement and/or enforce adequate policies and/or procedures to provide sufficient warnings and instructions to allow passengers, including Plaintiff, to have a reasonably safe means of ingress and egress to and from the vessel;

  w. Failing to have an adequate, properly trained and competent crew complement aboard the Vessel;

  x. Failing to investigate and ascertain the cause of prior similar incidents in its fleet of vessels so as to take measures to prevent their reoccurrence and/or eliminate or avoid the hazards, and more particularly Plaintiff's incident and subsequent injury; and

  y. In other manners expected to be discovered during the course of ongoing investigation and discovery.

17. The above acts and/or omissions by Defendants and/or their agents, employees and/or crew, proximately caused Plaintiff to sustain serious personal injuries, as the incident would not have occurred but for the above acts and/or omissions.

18. To the extent notice of any danger is required to be alleged, which Plaintiff denies, Plaintiff alleges Defendants knew of and/or created the foregoing dangerous and unsafe conditions that caused Plaintiff's injuries and did not correct them, or the conditions existed for a sufficient length of time so that Defendants, in the exercise of reasonable care, knew of them or should have learned of them and corrected them and/or warned Plaintiff of them. Insofar as it relates to conditions that Defendants did not create, if any, Defendants' knowledge was or should have been acquired through maintenance and inspection of the Vessel, and/or through prior incidents involving passengers injured during tender operations aboard its fleet

1  of vessels, and/or from its monitoring and supervision of its employees and crew.

2      19.    At all times material, Defendant had exclusive control of the Vessel.

3      20.    Plaintiff further alleges that following the incident alleged herein, she was seen, examined, and treated aboard the Vessel in Defendants' Medical Center by Defendants' doctors and nurses who had the duty to provide her with reasonable care under the circumstances and who breached their duty by failing to properly and adequately examine, assess, diagnose and treat her medical conditions caused by the incident alleged herein, causing further damages, including wound infection (cellulitis) requiring subsequent hospital admission.

    21.    At all times herein material, the doctors and nurses aboard the Vessel were subject to the control and/or right to control by Defendants and were the agents, apparent agents, servants, and/or employees of Defendants acting within the scope of their employment and/or agency, and Defendants were therefore vicariously liable for the negligent treatment of Plaintiff under the legal principles set forth in *Franza v. Royal Caribbean Cruises Ltd*., 772 F.3d 1225 (11th Cir. 2014).

    22.    As a direct and proximate result of the incident and the negligent acts and omissions alleged herein, Plaintiff was hurt and injured her health, strength and activity, suffered severe injuries to both her legs and shoulders, and suffered other severe injury to her body and shock and injury to her nervous system and person, all of which injuries have caused and continue to cause physical and emotional pain and suffering to the Plaintiff, mental anguish, permanent scarring and disfigurement, loss of enjoyment of life and inconvenience in the normal pursuits and pleasures of life. Plaintiff is informed and believes, and thereupon alleges that some or all of her injuries will result in permanent damages, disability and pain and suffering.  Plaintiff alleges pain and suffering and general damages to Plaintiff in an amount to be proven at the time of trial.

    23.    As a further direct and proximate result of the incident and the negligent acts and omissions alleged herein, it was necessary for Plaintiff to receive

medical care and treatment, and Plaintiff did sustain an expense for such medical treatment, care, medicines, and for other and further medical care. Plaintiff alleges the cost of the medical care and treatment, past and future, and other special damages according to proof at trial.

## PRAYER

WHEREFORE, Plaintiff MARJORIE CASHION prays for damages against Defendant as follows:

1. For general damages, according to proof;
2. For medical expenses past and future according to proof;
3. For other special damages according to proof;
4. For prejudgment interest;
5. For costs of suit; and
6. For other such relief as the Court may deem proper.

Dated: January 27, 2021     LAW OFFICES OF AKSANA M. COONE

By: */s/* Aksana M. Coone
Aksana M. Coone, Esq.
Attorneys for Plaintiff,
MARJORIE CASHION

## DEMAND FOR JURY TRIAL

Plaintiff, MARJORIE CASHION, hereby demands trial by jury of the above-captioned matter.

Dated: January 27, 2021     LAW OFFICES OF AKSANA M. COONE

By: */s/* Aksana M. Coone
Aksana M. Coone, Esq.
Attorneys for Plaintiff,
MARJORIE CASHION